Assuming that the unincorporated society, which existed at the time of the execution of the will in question, and which was subsequently incorporated, is sufficiently pointed out by the description in the will to enable us to say that it is the body intended by the testator, it becomes necessary to inquire whether the trust is one which can be executed by the court as a charitable use. The testator is presumed to have intended to appropriate the fund for the advancement of the objects which the society was formed to promote. It is shown that the corporation, which is the appellant in this case, is identical in its purposes with the voluntary association which was absorbed by the act of incorporation. These purposes, as expressed in the act of incorporation, are, "to diffuse more generally the blessings of education, civilization and christianity throughout the United States and elsewhere." Trusts in favor of education and religion have always been considered charitable uses. They are expressly mentioned in the statute of 43 Elizabeth, which, in regard to the definition of charities, was declaratory of the common law. But the advancement of civilization generally is not classed among charities in the statute, and I have not been able to find an adjudged *Page 410 
case in which it has been held to fall within the legal notion of charity. The term undoubtedly includes instruction in learning and the arts, but it embraces much more. It includes all those improvements in individual, social and political life which tend to meliorate the condition of men. A more general term could scarcely be chosen. In cases where there is a trust annexed to a bequest, but it is not such a trust as the court can execute as a charitable gift, the beneficial interest belongs to the next of kin. (Fowler v. Garlike, 1 Russ. Mylne, 232.) In Browne
v. Teale (referred to in 7 Ves., 50, note), personal estate was given by will to trustees to be from time to time forever applied "to the purchasing of such books as by a proper disposition of them, under the following directions, might have a tendency to promote the interests of virtue and religion and the happiness of mankind; the same to be disposed of in Great Britain or in any other part of the British dominions; this charitable design to be executed by and under the direction and superintendency of such persons, and under such rules and regulations, as under any decree or order of the high court of chancery shall from time to time be directed in that behalf." Lord Thurlow held that it was not a trust which the court could execute and that the next of kin were entitled to the fund. InMorice v. The Bishop of Durham (9 Ves., 399; 10 id.,
521), a testator had bequeathed all his personal estate to the Bishop of Durham, upon trust, after the payment of debts and legacies to dispose of the residue to such objects of benevolence and liberality as the bishop in his own discretion should most approve of. The master of the rolls (Sir William Grant) was of opinion that the trust could be completely executed without bestowing any part of the residue upon purposes strictly charitable, and that it could not therefore be said that the fund was given to charitable purposes; and as the trust was too indefinite to be disposed of for any other purpose, it was held that the fund should be disposed of among the next of kin of the testatrix. This *Page 411 
decree was affirmed by Lord Eldon. In the course of the opinion the lord chancellor remarked that it was not contended, and that it was not necessary to support the decree to contend, that the trustee might not consistently with the intention have devoted every shilling to uses in that sense charitable. But the true question, he said, was whether he might not equally, according to the intention, have devoted the whole to purposes benevolent and liberal, and yet not within the meaning of charitable purposes as understood by the court. If he could do so, and it was his opinion that he might, he could not be called to account for maladministration. He therefore held that the court could not decree the execution of the trust. In the case before the court the legatees might expend the fund for purposes promotive of universal civilization, which still would not be charitable objects in the understanding of the law.
This being, therefore, clearly a case in which the law of charitable uses does not aid the bequest, and does not in truth in any way apply, we are not called upon, or in my judgment at liberty to review the cases which have been determined upon that branch of the law. The case is submitted to us without argument, upon written points, which assume that the case of Williams v.Williams, lately decided in this court, lays down the law as held in this court in regard to charitable trusts. (4 Seld.,
524.) It has long been a subject of dispute in the courts of this country whether the peculiar jurisdiction of equity in respect to charities originated in the statute of charitable uses. If it did it was abrogated when that statute was repealed. If it was a portion of the jurisdiction of the English court of chancery, independently of that statute, it is in force in this state, according to the constitution, and to be enforced by the courts until repealed or modified by the legislature. So far as this court is concerned, the question has been settled in favor of the jurisdiction in the case just referred to. It is, no doubt, competent for us to reëxamine that judgment, *Page 412 
though for obvious reasons we ought to be reluctant to disturb a decision deliberately made here; and we should not do it except in rare and exceptional cases. Our judgments are precedents for the courts of original jurisdiction, and they are, moreover, evidence of the law upon which the citizens of the state are accustomed to act, and upon which they ought to be allowed to act safely. A question upon which so much may be said upon both sides, and upon which so much argument has been expended, should be considered as at rest when it has been determined in this court. It is the more necessary to adhere to this principle when we take into consideration the constitution of the court. A change of one-half, or of a greater number of the judges takes place annually, and if the rule be established that every judgment which we give is open to reinvestigation upon any change of the members of the court, the legal rules upon which the community are to act will be subject to continual fluctuations, and nothing can be considered as settled; and whenever it is proper to review one of our own decisions, it should be done in a case where the same question again arises, and has been presented, at least, if not argued by counsel.
I am in favor of affirmance, for the reasons which I have stated.
A.S. JOHNSON, T.A. JOHNSON, HUBBARD and WRIGHT, Js., concurred in the opinion delivered by SELDEN, J., and were in favor of affirming the judgment of the supreme court, for the reasons therein stated.
They, the four judges above named, with DENIO, C.J., and COMSTOCK, J., were of opinion that the judgment should be affirmed on the ground that the object of the charity was not sufficiently defined by the terms of the will. SELDEN, J., expressed no opinion as to this last proposition: *Page 413 
and COMSTOCK, J., none as to the questions discussed in the opinion of Judge SELDEN.
MITCHELL, J., dissented, and was of the opinion that the judgment of the supreme court should be reversed, and the decree made by the surrogate affirmed.
Judgment affirmed